Argued February 1, decided February 14, 1911.

## TRULLINGER v. HOWE.

[113 Pac. 4.]

CONTEMPT—PARTIES—ENTITLING.

1. Under Section 675, L. O. L., providing that, in proceedings for contempt, the State is the plaintiff, and the proceeding shall be prosecuted by the district attorney, and that, where the proceeding is commenced at the relation of a private party, the party shall be coplaintiff with the State, an affidavit in a contempt proceeding in a civil action, which does not name the state as a party, is demurrable.

CONTEMPT—AFFIDAVIT—SUFFICIENCY.

2. In contempt proceedings under Section 673, L. O. L., providing that, in cases other than those mentioned in Section 675, the fact constituting the contempt must be shown by affidavit before proceedings are commenced, an affidavit by defendant in an original action that by reason of the failure of the plaintiff to obey a decree by abating and modifying a dam, the defendant has sustained damage, and that the dam is more difficult to pass this season than last because of certain repairs, is insufficient, where there is no allegation that plaintiffs made the changes, or that there was an intentional violation of the decree, or that plaintiffs failed in improving the conditions.

CONTEMPT—SERVICE OF ORDER OR DECREE.

3. Before a party can be brought into contempt for not complying with an order or decree of court, service thereof must be made upon him, and a demand duly made that he comply therewith, unless it appears that he has personal knowledge or notice of such order or decree.

CONTEMPT—AFFIDAVIT—REQUISITES.

4. The affidavit to punish a party as for contempt in violating a decree in a civil suit must allege that the decree was served on the party in default, or that he had personal knowledge thereof.

CONTEMPT—AFFIDAVIT—SUFFICIENCY.

5. Proceedings for the punishment of those accused of the violation of a decree are *quasi* criminal, and the statutory provision relating thereto must be strictly complied with.

APPEAL AND ERROR—MATTERS OF RECORD.

6. Where an undertaking on appeal in an original action is not made a matter of record in contempt proceedings, the question of whether the original suit stayed the proceedings in the lower court, and thus divested that court of jurisdiction therein, cannot be considered in the Supreme Court.

From Yamhill:   WILLIAM GALLOWAY, Judge.

Statement by MR. JUSTICE BEAN.

This is a contempt proceeding against plaintiffs, based upon the following motion and affidavits, filed December 16, 1907:

"D. P. Trullinger and Carl S. Trullinger, plaintiffs, *v.* W. A. Howe, doing business under the name of Carlton Lumber Company, defendant.

"Now comes W. A. Howe, the defendant in the above-entitled action, by Williams, Wood & Linthicum, Walter S. Asher, and R. L. Connor, his attorneys, and moves the court that D. P. Trullinger and Carl S. Trullinger, the plaintiffs, and each of them, be required to obey and execute the decree herein rendered requiring them to so modify the dam maintained by them across the North Yamhill river known as Trullinger's dam, so as to permit the free passage of the logs of the defendant, and to show cause why they should not be punished for contempt of court in failing and refusing to so modify and abate said dam as to permit the passage of logs coming to said dam by the North Yamhill River during the natural stages and conditions of water in said river, and in support of said motion the said W. A. Howe shows and alleges as follows:

"That heretofore in this cause a decree was duly entered, which, among other things, decreed as follows: That the plaintiff D. P. Trullinger has a right to maintain and operate his said dam in the complaint described for the purpose therein alleged, so long and so far as it does not operate as an obstruction to the navigation of said river, and does not interfere with its use as a public highway, and that wherein said dam, or any part thereof, operates to interfere with the free use of said river as a public highway, said dam ought to be and it is hereby decreed that it shall be modified and adjusted so as to permit at all stages of natural water of free navigation of said river as a public highway, and for the floatation of logs. Which decree ever since has been and now is unreserved and of full force and effect heretofore, to wit, April 10, 1907, the plaintiffs herein appealed from said decree to the Supreme Court of the State of Oregon, which appeal is now pending and undetermined, but no order, act, or proceeding has been issued or had whereby said decree has been in any wise stayed or suspended. Heretofore, to wit, November 22, 1907, the North Yamhill River was, and for some time prior thereto had been, navigable for logs in commercial quantities and dimen-

sions by the natural stage and condition of the water in said river, and on or about said date the defendant commenced putting the logs into said river for floatation to his mill at Carlton, Oregon, at various points above said Trullinger's dam, and said logs floated upon the natural stage and condition of water as far as Trullinger's dam, where they were stopped by said dam and could not pass the same; whereas, if said dam had not obstructed said North Yamhill River, the said logs would by natural water without the use of splash dams have continued down the river to the said mills at Carlton. That by, reason of the obstruction of said river by said dams the said logs have been unable to pass on down said river, and still rest upon and are hung up on said dam, and the entire run of logs of this defendant is by reason of said dam as aforesaid held and obstructed, and so has been since the 22d day of November, 1907, and there has accumulated back of said dam in said river not less than ———— million feet of logs which now remained detained and obstructed as aforesaid. That defendant has a valuable contract with the Southern Pacific Company for the output of his said mill up to the first day of January, 1908, which contract is above the market price today for corresponding lumber and is extremely valuable to the defendant. That, in order to enable the defendant to operate his mill continually and especially during the summer season, it is necessary, especially if the defendant is not permitted to use splash dams, that he be allowed to avail himself fully and without obstruction of the navigability of the North Yamhill River during the winter season, and by reason of the failure of the plaintiffs to obey and conform to the decree aforesaid by abating and modifying the said dams so as to permit the passage of logs in natural stages of water in the said North Yamhill River, the defendant has sustained and is sustaining great loss and damage. Defendant has requested the plaintiffs to obey the decree of this court, and to adjust their said dam so as to permit the passage of said logs, which plaintiffs refuse to do.

> "Williams, Wood & Linthicum,
> "R. L. Connor, and
> "Walter S. Asher,
>     "Attorneys for the Defendant.

"State of Oregon,            ⎱
    "County of Yamhill ⎰ ss.

"I, W. A. Howe, first being duly sworn according to law, say that I am the defendant in the above-entitled cause, and that I have read the foregoing facts in support of the motion herein, and the same are true as I verily believe.
"[Signed]            ·            W. A. Howe.

"Subscribed and sworn to before me, this the 6th day of December, 1907.
"[Seal]            Walter S. Asher,
            "Notary Public in and for the State of Oregon.

Several other affidavits were filed at the same time in support of the motion, evidencing the facts therein alleged and to the effect that logs would float above, but not over plaintiffs' dam, and that there were at that time about 2,000,000 feet of logs in the river above, and obstructed by said dam. One of these, the affidavit of Charles E. Demarest, also states:

"And I say further that said Trullinger's dam is more difficult to pass this season than last, because during the summer certain repairs and changes had been made, which have resulted in raising the center of the dam higher than the wings, which throws the water to the side rather than concentrates it at the middle, and thus spreads the water thinly over the entire length of the dam."

But it appears that no additional facts were alleged therein as a foundation for the proceedings. Thereupon the trial court issued an order requiring plaintiffs to appear and show cause why they should not be punished for contempt. The plaintiffs by their attorneys demurred for the reasons:

"(1) That there is a defect of parties plaintiff herein. (2) That said affidavit does not state facts sufficient to require these parties to appear or show cause why they should not be punished for contempt."

The demurrer was overruled by the court. Plaintiffs refused to further plead. No other pleading or affidavit was filed, and no other evidence was produced in the matter. Based upon the affidavits filed by defendant the court found the facts, the concluding one being:

"That the said D. P. Trullinger and Carl S. Trullinger have failed, each of them have failed or refused, to execute and obey the decree of this court, already duly entered to the purport that wherein the dam maintained by them across the North Yamhill River, known as Trullinger's dam, or any part thereof, operates to interfere with the free use of said river as a public highway, said dam ought to be, and it is hereby decreed that it shall be modified and adjusted so as to permit at all stages of natural water of free navigation of said river as a public highway and for the floatation of logs."

The court adjudged that plaintiffs each pay a fine of $50, from which they appeal, assigning error in overruling the demurrer to the affidavit of defendant.

REVERSED.

For appellants there was a brief over the names of *Mr. Samuel B. Huston* and *Messrs. McCain & Vinton,* with oral arguments by *Mr. Huston* and *Mr. James McCain.*

For respondent there was a brief over the names of *Messrs. Williams, Wood & Linthicum, Mr. Roswell L. Connor, Mr. Walter S. Asher* and *Mr. Isaac D. Hunt,* with an oral argument by *Mr. Hunt.*

MR. JUSTICE BEAN delivered the opinion of the court.

1. In contempt proceedings, other than for a contempt committed in the presence of the court, Section 673, L. O. L., provides, "in cases other than those mentioned in Section 672, before any proceedings can be taken therein, the facts constituting the contempt must be shown by an affidavit"; While Section 675, L. O. L. provides:

"In the proceeding for a contempt, the State is the plaintiff. In all cases of public interest, the proceeding may be prosecuted by the district attorney, on behalf of the State, and in all cases where the proceeding is commenced upon the relation of a private party, such party shall be deemed a coplaintiff with the State."

The apparent reason for this statutory requirement is that, when a decree has been rendered by a court of this State, the State is interested in the enforcement of its provisions, and in seeing that no person is prosecuted for contempt in disobeying such decree, except in a proper case. Contempt proceedings, if civil, as in the case at bar, should be instituted in the name of the State upon the relation of a private party. This defect could have been cured by amendment at any time before trial: *State ex rel.* v. *Downing,* 40 Or. 314 (58 Pac. 863: 66 Pac. 917). No attempt to amend, however, was made in this case.

2. Plaintiffs maintain, as a second ground of demurrer, that the affidavits are insufficient to give the court jurisdiction. The gist of the charging part of the affidavits of defendant is, "by reason of the failure of the plaintiffs to obey and conform to the decree aforesaid by abating and modifying the said dams so as to permit the passage of logs in natural stages of water in the said North Yamhill River, the defendant has sustained and is sustaining great loss and damage," and that portion of the affidavit of Charles E. Demarest "that said Trullinger's dam is more difficult to pass this season than last, because during the summer certain repairs and changes had been made, which have resulted in raising the center of the dam higher than the wings." Considering both of these affidavits, it would appear that some changes had been made in the dam after the rendition of the decree, but there is no direct allegation that plaintiffs made the changes. From aught that appears in the affidavits they may have been made by defendant. And it nowhere

appears whether there was an intentional violation of the decree, or whether the plaintiffs, in endeavoring to modify the dam so as to permit the floating of logs in accordance with the decree, failed in improving the conditions.

3. Before a party can be brought into contempt for not complying with an order or decree of court, service thereof must be made upon him, and a demand duly made that he comply therewith, unless it appear that he has personal knowledge or notice of such order or decree, and this must be shown by the affidavit upon which the proceedings are based: *State ex rel.* v. *Downing,* 40 Or. 314, 325 (58 Pac. 863: 66 Pac. 917), and cases there cited.

4. The affidavit herein is defective, in that it makes no mention of either such service or knowledge of notice: *State ex rel.* v. *Downing,* 40 Or. 314, 325 (58 Pac. 863: 66 Pac. 917). In these particulars there is no compliance with Section 673, L. O. L.

5. Proceedings for the punishment of those accused of the violation of a decree are *quasi* criminal, and the statutory provision relating thereto must be strictly complied with: *State ex rel.* v. *Sieber,* 49 Or. 1, 4 (88 Pac. 313). We think the facts stated in the affidavits in this case insufficient to give the court jurisdiction to punish plaintiffs for contempt.

6. Plaintiffs also contend that the appeal from the decree in the original suit stayed the proceedings in the lower court, and thus divested that court of jurisdiction therein. The consideration of this question necessitates the examination of the undertaking on appeal in the original suit, which has not been made a matter of record in this proceeding, and this court therefore cannot take cognizance thereof. These views render it unnecessary to examine the other errors assigned.

The judgment of the lower court is accordingly reversed, and the case remanded, with instructions to sus-

tain the demurrer of plaintiffs, and for such further proceedings as may be deemed proper, not inconsistent with this opinion. REVERSED.