Argued March 19, reversed May 28, motion to modify decree denied July 2, 1929.

# STATE ex Rel. AZELL HEWSON v. GEORGE HEWSON.

(277 Pac. 1012.)

For appellant there was a brief over the names of *Mr. S. F. Wilson,* with an oral argument by *Mr. Edward J. Clark.*

For respondent there was a brief and oral argument by *Mr. F. H. Drake.*

ROSSMAN, J.—This proceeding was instituted in the Circuit Court for Multnomah County as a contempt proceeding based upon charges that the alleged contemnor had failed to pay $730.50, being a portion of the alimony awarded to the petitioner payable in monthly installments in a decree of divorce dated April 8, 1926. The proceeding was begun by the filing of a document May 21, 1928, entitled "a petition," phrased in the third person; its caption was "*Azell Hewson, Plaintiff,* v. *George Hewson, Defendant,*" and was accompanied with a statement bearing a similar caption entitled "affidavit" which was signed, "Azell Hewson," but not under

oath. Based upon these two documents an order was issued directing the defendant to show cause why he should not be adjudged guilty of a contempt of court. The order, the petition and the statement were served upon the defendant. The petition and the statement recited a paragraph of the divorce decree which directed the payment of alimony, they alleged the defendant failed so to do, and, that $730.50 was due and unpaid. These pleadings further alleged that the defendant was able to pay, and charged diversion of his funds into unwarranted expenditures to the neglect of his duty under the decree. When these documents were served upon the defendant he interposed a demurrer, specifying as one ground thereof the absence of the State of Oregon as a party to the proceedings. When the demurrer was overruled he filed an answering affidavit. Later a trial was had and on the sixth day of June, 1928, a judgment was entered which found the defendant guilty of a contempt for having failed to pay the sum of $840.50. It directed the defendant to pay that sum not later than June 28, 1928, and provided that should he fail so to do he should "be punished for such contempt by imprisonment in the county jail * * until the terms of said decree are fully complied with." During the course of the trial the plaintiff moved to amend the title of the cause so that it would appear *"State of Oregon ex rel. Azell Hewson* v. *George Hewson."* Thereupon the court and counsel launched into a discussion which apparently diverted their thoughts from the motion and eventually caused them to become interested in a new line of interrogation of a witness; as the result no ruling occurred upon the motion. The bill of exceptions recites: "While the transcript of

testimony is silent as to granting leave to amend the title of this cause by adding 'State of Oregon *ex rel.*,' it was the intention of the court to grant such leave.'' That document is entitled ''State of Oregon *ex rel.* Azell Hewson,'' etc., but is the first paper in this case so entitled?

In a confession of error filed in this proceeding ''the State of Oregon *ex rel.* Azell Hewson'' concedes ''That the unsworn statement dominated an affidavit and the sworn statement denominated the petition were not sufficient to give the court jurisdiction,'' the moving party therefore prays that the judgment of contempt be reversed. That motion is allowed. In view of the fact that relator intends to prosecute further similar proceedings against the contemner, the ends of justice will, perhaps, be served if we indicate briefly our views on some matters which are likely to arise upon the new proceedings.

■ The proceedings should be conducted in the name of the State of Oregon *ex rel.* the prosecuting party: Section 675, Or. L.; *State ex rel.* v. *Downing*, 40 Or. 309 (58 Pac. 863, 66 Pac. 917); *State* v. *Sieber*, 49 Or. 1 (88 Pac. 313).

■ In addition to the shortcomings of the affidavit confessed by the respondent we believe that it is also deficient in failing to set forth that the alleged contemner was familiar with the duty which the relator alleged he neglected. In *State* v. *Stillwell*, 80 Or. 610 (157 Pac. 970), we said:

''Before a party's freedom of action can be justly interfered with in a civil contempt proceeding, a copy of the order which it is asserted he has disobeyed must be served upon him and a demand for obedience made by the party or his agent who is authorized to require a compliance with the terms

of such command. * * And the affidavit charging the contempt must aver that the order has thus been served and the demand made.''

See to same effect, *Trullinger* v. *Howe*, 58 Or. 73 (113 Pac. 4). In the recent case of *State ex rel.* v. *Hambrecht*, 128 Or. 305 (274 Pac. 507), the contemner's knowledge of the duty created by the decree was not positively averred, but it was inferred from those recitals of the affidavit to the effect that he had at one time complied with that duty. In our present case neither the so-called affidavit, nor the petition, affords any basis for such an inference. Any further proceedings should be preceded by an affidavit which will charge the defendant with previous knowledge of the decree, and should allege a demand, unless the necessity of the latter is eliminated in the manner we shall later indicate.

■ It has now become established in this state that proceedings of this character, which seek to imprison for disobedience of a decree awarding alimony, are not in conflict with constitutional safeguards assuring freedom from imprisonment for debt: *State ex rel.* v. *Hubble*, 128 Or. 46 (273 Pac. 395), and *State* v. *Francis*, 126 Or. 253 (269 Pac. 878); *State ex rel.* v. *Hambrecht, supra.*

■ While, as previously indicated, it is generally necessary to make a demand for compliance before instituting the proceeding, and to so allege in the affidavit (see, also, 13 C. J. 17), the demand may be eliminated when no immediate arrest is proposed and the filing of the affidavit is followed by a notice served upon the alleged contemner apprising him of the fact that the relator will on a day certain apply for a rule requiring him to show cause why he

should not be punished for contempt for failing to comply with the decree: *Shaffner* v. *Shaffner*, 212 Ill. 492 (72 N. E. 447).

■ The appellant argues that the adjudication of his guilt upon the contempt charge is erroneous because the decree in the divorce suit should not have ordered the payment of alimony; this contention is premised upon the fact that prior to the divorce suit husband and wife effected a property settlement one of the provisions of which was an undertaking upon the part of this defendant to pay his wife monthly installments of money which are precisely similar to those exacted by the alimony provision of the decree. The complaint in the divorce suit mentioned the property settlement, recited the stipulated payments, and prayed for an allowance of alimony in accordance with those provisions of the property settlement; the latter instrument, however, did not expressly declare that its provisions should be fused into the decree. The respondent now contends that the court erred when it made such provision in its decree. Personal service of the complaint and summons in the divorce suit was had upon the defendant; he defaulted. We fail to understand how we would be justified in converting this proceeding into an appeal of the divorce suit. To say the best for appellant's contentions, the decree may have been erroneous, but it certainly was not void. His present contentions undertake to make a collateral attack upon that decree. From Freeman on Judgments (5 ed.), Section 311, we quote: "A party who neglects or refuses to comply with the terms of an order or judgment and attacks the validity of the same when proceeded against in contempt for such

disobedience occupies the position of a collateral assailant." The authorities cited sustain the text and show that the collateral attack cannot succeed. Indeed they suggest that if the judgment which the relator seeks to enforce is not permanent his exclusive remedy is a motion in the original proceeding to modify it. From 34 C. J., Judgments, Section 828, page 522 we quote:

"A proceeding to enforce a judgment is collateral to the judgment, and therefore no inquiry into its regularity or validity can be permitted in such a proceeding, whether it is a direct action on the judgment, or on a note given in satisfaction of the judgment, or a proceeding to revive the judgment, or proceedings supplementary to execution, or bill in equity in aid of execution or to enforce the lien of the judgment, or presentation of the judgment to the probate court for classification as a demand against the judgment debtor's estate, or an action of ejectment, or a proceeding by *mandamus* to compel the payment of a judgment, or to compel the levy and collection of a tax to provide funds for the payment of the judgment, * * "

In *State ex rel. v. Downing, supra,* a somewhat similar consideration was advanced; in disposing of it this court held:

" * * It has just been decided in the case of *Hammer* v. *Downing,* 41 Or. 234 (66 Pac. 916), in the proceedings supplemental to execution, that the| order was erroneously issued; but this does not render it void. While a party cannot be punished for disobeying a void order (*Brown* v. *Moore,* 61 Cal. 432; *Ruhl* v. *Ruhl,* 24 W. Va. 279), the rule is universal that a voidable order must be obeyed until it has been set aside in a proper proceeding instituted or prosecuted for that purpose: *Ex parte Spencer,* 83 Cal. 460 (23 Pac. 395, 17 Am. St. Rep.

266); *In re Cohen,* 5 Cal. 494; *People* v. *O'Neil,* 47 Cal. 109; *Lutt* v. *Grimnot,* 17 Ill. App. 308; *Keenan* v. *People,* 58 Ill. App. 241; *State* v. *Horner,* 16 Mo. App. 191; *Forrest* v. *Price,* 52 N. J. Eq. 16 (29 Atl. 215). Mr. Justice ALLEN, in *People* v. *Bergen,* 53 N. Y. 404, speaking of a similar order, said: 'If it was improvidently or erroneously granted, the remedy of the party aggrieved was by application to vacate it or by appeal. It is not void, and it cannot be reviewed upon an application to punish for a disobedience of it. So long as it remains in force, the duty of all parties is to obey it, and the merits of the order are not reviewable.' The want of jurisdiction, such as will justify the disobedience of an order of court, must be manifest from an inspection of the proceedings at their inception, and not such as develops during the hearing: *Ex parte Wimberly,* 57 Miss. 437; *Forrest* v. *Price,* 52 N. J. Eq. 16 (29 Atl. 215); *People* v. *Bergen,* 53 N. Y. 404. The court had jurisdiction of the proceedings supplemental to execution at their inception, and the issuance of a voidable order therein affords no justification for a disobedience thereof: Rapalje, Contempt, § 33.'' It follows that the foregoing is without merit.

The error of ordering payment of a larger sum than that alleged we assume will not occur upon a new proceeding. Likewise the finding that the defendant had disobeyed the court's decree in part could constitute no occasion for his imprisonment until the entire decree had been complied with.

REVERSED. MOTION TO MODIFY DECREE DENIED.

BELT, McBRIDE and RAND, JJ., concur.