Argued September 25, reversed November 19, 1952

## STATE OF OREGON ex rel. WEBSTER v. WEBSTER

250 P. 2d 403

*F. E. Wagner,* of Portland, argued the cause and filed a brief for appellant.

No appearance for respondent.

Before BRAND, Chief Justice, and ROSSMAN, LUSK, LATOURETTE and WARNER, Justices.

ROSSMAN, J.

This is an appeal by the defendant from a judgment of the circuit court entered August 24, 1951, which adjudged him guilty of an indirect contempt of court and sentenced him to serve a term in the Multnomah county jail unless he purged himself of the contempt by complying with an order entered by the same court March 28, 1951, the purported disobedience of which constituted the contempt. The order of March 28, 1951, as disclosed by the affidavit of the relatrix, former wife of the defendant, directed him to pay her "forthwith" the sum of $1,500.

The affidavit of the relatrix, to which we have referred, stated:

"That on the 5th day of February, 1947, a decree was made and entered in the above entitled Court in Case No. 174-670 wherein the defendant above named was ordered to pay me, as plaintiff, through the Clerk of the Court, the sum of $50.00 per month for the support of the minor daughter of the parties to said suit. That said minor daughter has not reached the age of majority and is now dependent. That on the _____ day of March, 1951, the above entitled Court, after hearing the testimony of the parties and of their witnesses, made and entered an order wherein it was determined that the defendant was in arrears in said payments in the sum of $1500.00 and ordered the defendant to pay said sum forthwith. That defendant has not paid said sum, or any part thereof, nor has he made any payment whatsoever since that date."

The defendant-appellant submits five assignments of error, one of which follows:

"The court erred in adjudging the defendant guilty of contempt for reason that the affidavit upon which the order or orders for his appearance was made, dated June 5, 1951, did not disclose that the defendant had notice of or had been served with a copy of the order of March 28, 1951."

Section 11-504, OCLA, states:

"In cases other than those mentioned in section 11-503, before any proceeding can be taken therein, the facts constituting the contempt must be shown by an affidavit presented to the court or judicial officer * * *. The affidavit shall be sufficient if it set forth the facts constituting the contempt, * * *."

Section 11-503, mentioned in the quoted language, is applicable only to direct contempts.

■ The affidavit which institutes proceedings in indirect contempts has been likened to a complaint: *State ex rel. v. Sieber,* 49 Or 1, 88 P 313. It was held in *State ex rel. v. Conn,* 37 Or 596, 62 P 289:

"* * * This affidavit is essential to the jurisdiction of the court in all proceedings for constructive contempts (State v. Kaiser, 20 Or. 50, 23 Pac. 964, 8 L.R.A. 584); and it must state facts which, if established, will constitute the offense. If it is insufficient in this respect, there is nothing to set the power of the court in motion, and it is without jurisdiction to proceed: * * *."

The same point of view was recently reiterated in *State ex rel. v. Bassett,* 166 Or 628, 113 P2d 432, 114 P2d 546, when it was declared:

"By necessary implication from the language of the statute, the affidavit, which is regarded as the initiatory pleading (*State ex rel. v. Seiber,* 49 Or

1, 88 P 313), suffices to confer jurisdiction on the court provided it sets forth 'the facts constituting the contempt.' See, State ex rel. v. Rogers, 124 Or 656, 265 P 784.''

■ We take from *State ex rel. v. Stewart,* 163 Or 585, 96 P2d 220, the following:

"It is well settled that a defendant must be clearly shown to be in contempt before the court will entertain an application which seeks to punish him. Rapalje on Contempts, 111, § 86. We read in 13 C.J., 66, § 89, as follows:

" 'Since no intendments or presumptions are indulged in aid of the complaint in contempt proceedings because of their criminal nature it has been held that, where the contempt consists in doing a forbidden act, the affidavit is fatally defective unless it alleges an unlawful intent. * * *.' ''

In *Trullinger v. Howe,* 58 Or 73, 113 P 4, the contempt proceeding was preceded by a suit in which the purported contemners were the plaintiffs and the relators were the defendants. The trial of the suit resulted in the entry of a decree which ordered the plaintiffs to alter a dam which they had constructed in the Yamhill river. The contempt proceeding was instituted by an affidavit filed by the relators, who, as we have said, were the defendants in the suit. It averred the failure of the plaintiffs (contemners in the contempt proceeding) to comply with the decree. Following the filing of the affidavit, the court issued an order which required the alleged contemners to appear and show cause why they should not be punished. The purported contemners demurred to the affidavit on the ground "that said affidavit does not state facts sufficient to require these parties to appear or show cause * * *.'' The demurrer was overruled and the order which overruled it became the subject

matter of the assignment of error. In holding that the order erred, this court said:

"Before a party can be brought into contempt for not complying with an order or decree of court, service thereof must be made upon him, and a demand duly made that he comply therewith, unless it appear that he has personal knowledge or notice of such order or decree, and this must be shown by the affidavit upon which the proceedings are based: *State ex rel. v. Downing,* 40 Or. 314, 325 (58 Pac. 863: 66 Pac. 917), and cases there cited.

"The affidavit herein is defective, in that it makes no mention of either such service or knowledge of notice: *State ex rel. v. Downing,* 40 Or. 314, 325 (58 Pac. 863: 66 Pac. 917). * * *."

The contempt proceeding which was the subject matter of *State v. Stillwell,* 80 Or 610, 157 P 970, was preceded by a suit for a divorce which ended in a decree directing the defendant (purported contemner) to pay support and maintenance money to his former wife who became the relatrix in the contempt proceeding. The defendant had personal notice of the divorce suit. After the relatrix had filed the affidavit which commenced the contempt proceeding, the court issued a warrant for the defendant's arrest. Following a trial of the contempt proceeding, the court found the defendant guilty and sentenced him to imprisonment. In reversing that judgment, the majority opinion of this court held:

"Before a party's freedom of action can be justly interfered with in a civil contempt proceeding, a copy of the order which it is asserted he has disobeyed must be served upon him and a demand for obedience made by the party or his agent who is authorized to require a compliance with the terms of such command. The purpose of serving a copy of the order is to avoid the necessity of arresting the party upon whom the obligation is enjoined by

affording him a last opportunity to comply with the court's direction before he is apprehended for his failure so to do; and the affidavit charging the contempt must aver that the order has thus been served and the demand made. A failure in this respect renders the sworn statement as to the averment of facts insufficient to give the court jurisdiction of the subject matter: *State ex rel. v. Downing,* 40 Or. 309, 325 (58 Pac. 863, 66 Pac. 917). The affidavit herein does not contain such an allegation, nor does the answer admit that fact, but the latter asserts the court was powerless to hear and determine the proceedings."

Mr. Justice HARRIS filed a dissenting opinion, which said:

"The affidavit must show either that a copy of the order has been served, or that the party has actual knowledge of the making of the order. In the instant case the affidavit does not allege that John R. Stillwell was served with a copy of the order, nor does it aver that he had actual knowledge of the making of the order, and consequently the affidavit is not sufficient: *State ex rel. v. Downing,* 40 Or. 309, 325 (58 Pac. 863, 66 Pac. 917); *Trullinger v. Howe,* 58 Or. 73, 79 (113 Pac. 4); 9 Cyc. 12."

From *State ex rel. v. Hambrecht,* 128 Or 305, 274 P 507, we take the following:

"It is unnecessary that the initiatory affidavit aver that service of the copy of the order of payment, upon which the contempt is based, or demand of obedience to it, if the party against whom the proceedings are instituted has actual knowledge of the order: * * *

"It appears from the affidavit that the defendant in compliance with the original order and decree of divorce for the payment of alimony, had paid the sum of $1,992.95. This shows that the defendant had knowledge of the order. * * *

"The defendant, by his answer in the contempt proceedings, admits the issuance of the order of payment. This would supply the defect in the affidavit, if there were such a defect: * * *."

The judgment of guilt was affirmed.

In *State ex rel. v. Hewson,* 129 Or 612, 277 P 1012, we reaffirmed the rule employed in the three decisions which we just reviewed and also in the Downing decision, but recognized that the affidavit need not aver that a demand was made upon the defendant for his compliance with the alleged duty if a show cause order is employed and not a warrant of arrest. The show cause order operates as a demand; such was the holding in the Hewson case.

*State v. La Follett,* 132 Or 257, 284 P 283, a contempt proceeding, was based upon a failure by the defendant to comply with a divorce decree which directed him to pay (1) $75 monthly for the support and maintenance of his former wife and children; (2) $75 costs; (3) an attorney fee of $50. The defendant was personally served in the divorce suit and actively participated in it. After he had failed to comply with the decree, a certified copy of it was served upon him by the local sheriff. Several days later two affidavits were filed which instituted the contempt proceedings. One was by his former wife, the plaintiff in the divorce suit; the other by the attorney who had represented her. Both affidavits recited the entry of the decree and the defendant's failure to comply with it. The affidavit of the attorney recited, in addition, that the decree was personally served upon the defendant. Following the filing of the affidavits, an order was served on the defendant requiring him to show cause. At the appointed time he appeared and presented a demurrer which challenged the sufficiency of the

affidavit filed by his former wife. The demurrer was predicated upon the ground that his wife's affidavit failed to state that the defendant was served with a copy of the decree and that it also failed to state that a demand had been made upon him for the payment of the money. The demurrer was overruled and, after the defendant had declared that he would stand upon it, the court found him guilty. The decision of this court, after reviewing our earlier ones and taking note of their holding that the affidavit must show either that the copy of the order was served upon the alleged contemner or that he had actual knowledge of it, sustained the judgment of guilt. It pointed out:

> "The defendant in the instant case was a party to the divorce proceedings; he was served with summons, personally appeared and was represented by counsel at all stages of the proceedings, and appeared in opposition to the making of the order requiring the payment of the moneys referred to. He, therefore, had knowledge of the making of the order and of the requirements contained in it and plaintiff's affidavit shows that he told her that he would never pay her one cent. Under these circumstances neither the service of a copy of the order nor a demand for payment were facts or evidence of facts constituting the contempt and, hence, under the statute they were not essential to the validity of the affidavit. The statute did not contemplate, nor does it require, the statement of any fact or facts not essential to constitute the contempt charged."

The above concludes our review of our previous decisions.

By reverting to the affidavit which commenced this proceeding, it will be noticed that it charges that the defendant failed to comply with an order made "on the ...... day of March, 1951". Thus, this pro-

ceeding is based upon the defendant's alleged failure to comply with that order, not the one which was made when the court entered its divorce decree February 5, 1947.

We shall assume that the phrase "on the _____ day of March, 1951" means March 28, 1951. The affidavit avers that the order just mentioned found that "the defendant was in arrears in said payments in the sum of $1500.00 and ordered the defendant to pay said sum forthwith". It nowhere alleges that a copy of the order was served upon the defendant, nor does it attribute to him knowledge of that order, unless the term "arrears" implies that he had made payments upon a debt and thereby admitted knowledge of it. One who makes payments upon an obligation may thereby admit that he is familiar with the obligation, debt or duty which he is in part discharging.

The word "arrear" is defined in Webster's New International Dictionary, 2d Ed., as meaning:

"2. That which is behind in payment or which remains unpaid, though due; esp., a remainder, or balance, which remains due when some part has been paid; * * *

"3. That which is held back or in reserve; a part that is overdue."

The Oxford English Dictionary defines "arrear":

"4. Behind in the discharge of duties or liabilities; in indebtedness, in debt. * * *

"7. That wherein one has fallen behind. A duty or liability overdue and still remaining undischarged, esp. a debt remaining unpaid."

Black's Law Dictionary, 3d Ed., assigns to the words "arrears" and "arrearages" this meaning:

"Money unpaid at the due time, as rent behind; the remainder due after payment of a part of an account; * * *

" 'In arrear (arrears)' means overdue and unpaid. Hollingsworth v. Willis, 64 Miss. 157, 8 South. 170. Behind in the payment of that which is due."

It is seen from the foregoing that the word "arrears" can readily refer to a sum which is due but upon which no payment has been made. Unlike the word "balance", it designates a sum which is now due, whether or not anything has been paid upon it. Thus, when the court found, according to relatrix's affidavit, that "the defendant was in arrears in said payments in the sum of $1500.00", it did not thereby necessarily warrant a belief that he had knowledge of any duty or obligation out of which the arrearages arose.

Moreover, this proceeding is not based upon the defendant's purported failure to comply with the demands of the divorce decree of February 5, 1947, whatever those demands may be, but upon his failure to pay the sum of $1500.00 "forthwith". He has paid nothing upon that sum and the term "arrears" did not refer to it. There is nothing in the affidavit which suggests that the defendant was served with a copy of the order of March 28, 1951, or that he had knowledge of it.

■ It follows from the foregoing that the affidavit upon which this proceeding is based fails to state "the facts constituting the contempt." We sustain the assignment of error under consideration. The judgment of the circuit court is reversed.